## Kelly's License

*Joseph B. Quinn, Jr.*, for petitioner.

*J. M. Sheimer*, Special Deputy Attorney General, contra.

OLIVER, P. J., October 29, 1940.—The petition in this case requested a renewal of the liquor license for premises 7215 Frankford Avenue, Philadelphia, and a transfer of that license from those premises to the premises next door, number 7217. The parties are the same. All requirements of the Liquor Control Board have been met as to character of the individuals, character of the place, proper equipment, and financial arrangements. The board has refused the application solely on the ground that the deed, dated January 11, 1919, which conveyed the entire area between Frankford Avenue on the west and Princeton Avenue on the east, and between Cottman Street on the north and Walker Street on the south, contained restrictions, including a prohibition of the use of any part of the ground for a "tavern or building for the sale or manufacture of beer or liquor of any kind or description."

The two properties on Frankford Avenue are within the restricted area. The license for premises 7215 was granted in 1933 and has since continuously been in force. Notice of application for the issuance of a license for premises 7217 has conspicuously been displayed in the front first floor window of those premises since August 5, 1940. No remonstrance or protest of any kind has been filed.

The applicants for transfer took over the business three years ago, paying $3,000 for the goodwill and fixtures. At the request of the board, they deposited that money in escrow until the board had an opportunity to investigate their application for a transfer of the license. After investigation, the board approved the transfer and the purchase money was thereupon paid to the former owner.

The applicants have since purchased premises 7217 Frankford Avenue for the sum of $6,500 and have made improvements to the property costing approximately $2,500. Their investment in their business venture is therefore approximately $12,000, representing their combined life savings. Such investment has been made in reliance upon the fact that the Liquor Board, after full investigation, has permitted them to conduct a licensed tavern at 7215 Frankford Avenue for the past four years.

When the restrictions were imposed in the deed of 1919 the whole area was undeveloped farm and woodland. In the course of development Frankford Avenue never became a residential district. From the start, it developed as a commercial neighborhood. For a substantial number of city blocks in each direction from the premises in question, it contains only business properties. At the southeast corner of Frankford Avenue and Cottman Street there is a large drive-in gasoline station, which, in addition to furnishing oil and gas, cleans and lubricates cars. Following in a southwardly direction, on the same side of Frankford Avenue, are a lunch car, a large Food Fair market with an 80-foot front and a surrounding parking space sufficient to park 200 cars, a garage, another gaso-

line station and garage repair shop, a barber shop, premises 7217 and 7215, a hat store, and a large Bell Telephone building. The open-air parking lot referred to above, in addition to occupying space along Frankford Avenue, runs along the rear of a number of the properties facing on the avenue, including premises 7215 and 7217.

Directly across the street, along the west side of Frankford Avenue, which is not within the area covered by the restrictions, there are, starting at the south side of Cottman Street, a large empty store formerly occupied by the Food Fair, a State liquor store, a Kresge five- and ten-cent store, a licensed tavern and stores, including one with a liquor dispenser's license.

On the south side of Cottman Street, eastwardly from Frankford Avenue, four houses have been changed to stores, one house is a licensed Republican Club, and in several more houses commercial businesses are being carried on, although the buildings have not been altered. On the north side of Cottman Street is a Penn Fruit Market, a gas station, a motion picture theater and other business properties.

While the portion of the originally restricted area, away from Frankford Avenue and Cottman Street and certain other busy streets, still remains residential in character, the area where the premises in question are located is exclusively commercial. While the restrictions did not prohibit commercial development, they did prohibit "any offensive occupation" which might include garages, gas stations and repair shops, and open-air parking areas. Notwithstanding the express prohibition against any tavern, there has been a tavern on premises 7215 for approximately eight years, without protest.

Although the area directly across Frankford Avenue is not within the restricted area, it nonetheless borders it and it contains a State liquor store, two licensed taverns, and a delicatessen store with a retail dispenser's license.

There is also the licensed club around the corner on Cottman Street. It is extremely difficult to see how the enforcement of the restriction along the east side of the wholly commercial Frankford Avenue could be of any possible benefit to the inlying residential area. The two areas constitute different and essentially separate and independent neighborhoods. Furthermore, with liquor-dispensing establishments just across the street and one around the corner, it cannot be said that granting the applicants' petition would bring something new and unwanted to the neighborhood. That is especially true when we recall that the applicants and their predecessor have continuously and without protest sold liquor at premises 7215 for the past eight years.

Furthermore, the restrictions referred to were not set forth or in any way referred to in the granting clause of the 1919 deed, which conveyed a full estate to the grantee. As the restrictions were set forth solely in the habendum, it is contended that they are invalid in that a grantor, after conveying a full estate without restriction, cannot cut down the grant by a repugnant habendum clause.

Under all the circumstances, we are of the opinion that the appeal should be sustained, the transfer permitted, and the license renewed.

Our views upon the legal questions involved are well expressed by President Judge Knight in Johnson's License, 34 D. & C. 205, and by Judge Laird in Ted's Union Inn's License, 37 D. & C. 220.

### Order

And now, October 29, 1940, the appeal is sustained and the Pennsylvania Liquor Control Board is directed to renew the license for premises 7215 Frankford Avenue, Philadelphia, and is further directed to permit and allow the transfer of that license from those premises to the adjoining premises 7217 Frankford Avenue, Philadelphia. Appellants are directed to pay the costs.